UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

MATS JARLSTROM, an individual,

Plaintiff,

v.

CITY OF BEAVERTON, an Oregon municipal corporation,

Defendant.

Case No.: 3:14-CV-783-AC

FINDINGS AND RECOMMENDATION

---

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Mats Jarlstrom ("Jarlstrom") claims defendant City of Beaverton ("City") is violating his substantive due process rights under the Fourth Amendment by maintaining yellow-light intervals at signalized intersections which are too short to allow vehicles to stop safely. Jarlstrom seeks injunctive relief prohibiting the City from continuing this practice. The City moves

to dismiss the complaint arguing Jarlstrom lacks standing and has failed to state a viable claim for relief. Jarlstrom opposes the motion and moves to amend his complaint to address some of the issues raised by the City in its motion to dismiss. The City opposes the motion to amend arguing futility, bad faith, and prejudice.

The court finds Jarlstrom has failed to allege he is realistically threatened with a certainly impending injury unique to him, a causal connection between the City's conduct and the threat of such impending injury, or that a ruling in his favor will alleviate the threat of injury, and his proposed amendments fail to remedy these defects. Accordingly, the court recommends the City's motion to dismiss be granted based on lack of standing and Jarlstrom's motion to amend be denied as futile.

*Background*

Jarlstrom filed this action on May 13, 2104, identifying it as a "civil rights case under Section 1983 of the Civil Rights Act of 1964, 42 U.S.C. § 1983." ( Compl. ¶ 1.) In his complaint ("Complaint"), Jarlstrom challenges the legality of the City's yellow-light intervals and alleges the City is illegally issuing tickets at red-light camera enforced signalized intersections. (Compl. ¶¶ 1, 10.) Jarlstrom does not allege he has been personally affected by the City's actions but that the "unlawfully short yellow-light intervals . . . expose pedestrians, drivers and vehicle passengers to serious risk of physical injury or death," and result in a dramatic increase in the number of tickets issued at red-light camera enforced intersections. (Compl. ¶¶ 11, 12.)

The City filed a motion to dismiss the Complaint, arguing Jarlstrom lacks standing based on his failure to allege an injury-in-fact, a causal relationship, or redressability. The City also asserts Jarlstrom fails to allege a violation of a federal constitutional or statutory right and instead has

alleged merely a violation of state law. Alternatively, assuming Jarlstrom intended to allege a substantive due process claim under the Fourteenth Amendment, the City moves to dismiss the Complaint for failure to state a claim, based on case law establishing the absence of a substantive due process claim with regard to red-light camera programs and Jarlstrom's failure to allege an affirmative action which shocks the conscience.

Jarlstrom then moved to amend the Complaint to clarify he was alleging a substantive due process claim, add allegations of personal injury, and eliminate any reference to the red-light cameras. Jarlstrom refused the City's offer to consent to the filing of the amended complaint if he conceded the motion to dismiss and filed a memorandum opposing the City's motion to dismiss.

The City filed opposition to Jarlstrom's motion to amend characterizing the proposed amendment as futile contending the amendments still do not allege the elements necessary to establish standing or a valid claim under the Fourteenth Amendment, and asserting arguments similar to those found in the motion to dismiss. The City also contends Jarlstrom's refusal to concede the motion to dismiss necessitating the current motion practice was in bad faith, and that if leave to amend is granted the City is prejudiced by having to file a motion to dismiss the newly-filed amended complaint.

*Legal Standard*

I. Rule 12(b)(1) Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the court." *Ahmed v. Scharfen*, No. C 08-1680 MHP, 2009 WL 55939, at *3 (N.D. Cal. Jan. 7, 2009) (citing *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039-40 (9th Cir. 2003)). This challenge to jurisdiction may be either facial or factual,

depending on whether the motion relies only on the allegations in the complaint or if it relies on evidence extrinsic to the complaint as well. *See Savage*, 343 F.3d at 1039 ("In evaluating the rule 12(b)(1) motion to dismiss, the district court considered affidavits furnished by both parties. This is proper because Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint.") Where the challenge is factual, the court "need not" presume true the allegations contained in the complaint. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The party asserting jurisdiction bears the burden of establishing that it exists in a given case. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citing *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 182-183 (1936)).

II. Rule 15 Motion to Amend

After the initial pleading stage, a plaintiff may amend his "pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a) (2013). "Although the rule should be interpreted with 'extreme liberality,' leave to amend should not be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). A trial court may deny the motion if permitting amendment would prejudice the opposing party, produce an undue delay in litigation, result in futility for lack of merit, is sought by plaintiffs in bad faith or with a dilatory motive, or the plaintiffs have filed numerous amended complaints. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Prejudice to the opposing party carries the "greatest weight" in determining whether to deny leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Whether to grant leave to amend lies within the sound discretion of the trial court. *Webb*, 655 F.2d at 979. In exercising this discretion, however, the court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Id.*

*Discussion*

I. Motion to Dismiss

A federal court lacks subject matter jurisdiction over a suit brought by a plaintiff without standing under Article III of the United States Constitution. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). In the event the court determines a plaintiff lacks constitutional standing, it should dismiss the claim under Rule 12(b)(1). *Id.* The "irreducible constitutional minimum of standing" requires demonstrating: (1) the plaintiff suffered an "injury in fact" – an invasion of a legally protected interest that is concrete and particularized, and actual or imminent; (2) causal connection between that injury and the conduct complained – the injury must be traceable to the actions of the defendant, not the result of an independent action a third party; and (3) the injury will likely be addressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Jarlstrom alleges in the Complaint that the City's unlawfully short yellow-light intervals expose him, and other pedestrians, drivers, and vehicle passengers, to serious risk of injury.[1] Jarlstrom concedes he lacks standing to assert the rights of others but argues he has met the standing requirement by asserting his own rights as a driver and pedestrian in the City. Limiting the Complaint in this manner, Jarlstrom alleges he is a resident of the City who is exposed to "serious

---

[1]Jarlstrom also alleges the short yellow-light intervals resulted in a dramatic increase in the issuance of tickets to drivers at red-light camera enforced intersections, but he has since clarified he does not intend to rely on these allegations.

risk of physical injury or death because pedestrians and/or vehicles may be entering the intersection with a green light before a vehicle attempting to safely drive through an intersection during the yellow light interval has sufficient time to accomplish that transit." (Compl. ¶¶ 1, 3, 12.)

In his declaration filed with his opposition briefing, Jarlstom represents that he regularly drives within the City and through signalized intersections either by himself or with his family; has significant fears that he will be involved in a collision while traveling through a short yellow-light interval intersection; has met with various City officials over the past year to discuss his concerns; and believes the discovery process will reveal evidence that the short yellow-light intervals have caused a higher level of accidents than would have occurred if the intervals were appropriately timed. (Jarlstrom Decl. ¶¶ 2-6.) The filing of the declaration, and the court's consideration thereof, converts the jurisdictional challenge from a facial to a factual attack. Accordingly, the court need not presume the truthfulness of the allegations in the Complaint.

*A. Injury-in-Fact*

Jarlstrom seeks only injunctive relief in the Complaint. Consequently, to satisfy the injury-in-fact requirement, he must allege that he is realistically threatened with a "'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)(quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)("To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized [and] the threat must be actual and imminent, not conjectural or hypothetical . . . ." (citation omitted)). The Ninth Circuit has "consistently held that an injury is 'actual or imminent' where there is a 'credible threat' that a probabilistic harm will materialize," and has recognized that this "threatened harm" requirement "'is by nature

probabilistic.'" *Natural Res. Def. Council v. United States Envtl. Prot. Agency*, 735 F.3d 873, 878 (9th Cir. 2013)((quoting *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 948 (9th Cir. 2002). "Allegations of possible future injury do not satisfy the requirement of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)(quoting *Babbit v. Farm Workers*, 442 U.S. 289, 298 (1979)(quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923))). "Abstract injury is not enough." *Lyons*, 461 U.S. at 101. "Our goal in these cases is to ensure that the concept of 'actual or imminent' harm is not 'stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Art. III purposes.'" *Natural Res.*, 735 F.3d at 878 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,564 n.2 (1992)).

In *Lyons*, the Supreme Court found a plaintiff's concern that he would be subjected to an illegal choke hold in the future was insufficient to establish the requisite "likelihood of substantial and immediate injury." *Lyons*, 461 U.S. at 111. The possibility the plaintiff would again violate the law resulting in an interaction with an officer who would choke him into unconsciousness without provocation or resistance by the plaintiff was too tenuous to create the actual controversy required to support an injunction. *Id.* at 105. The Court relied, in part, on *O'Shea,* in which it refused to find a case or controversy where the likelihood of injury was based on a party's violation of the law. *Lyons*, 461 U.S. at 103 ("It was to be assumed 'that [plaintiffs] will conduct their activities within the law . . . .' " (quoting *O'Shea*, 461 U.S. 95, 414 U.S. at 497)); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1338 (11th Cir. 1994)(Thus, in *Lyons*, the Supreme Court refused to assume that the plaintiff would again violate the traffic laws . . . .").

Similarly, in *Ashcroft v. Mattiss*, 431 U.S. 171 (1977), the Court denied a request for a

declaration that a state statute authorizing the use of deadly force in apprehending a suspected felon was unconstitutional. The plaintiff, father of a man killed by police officers during an arrest, alleged he had another son who, if suspected of the commission of a felony, "might flee or give the appearance of fleeing, and would therefore be in danger of being killed by these defendants or other police officers." *Id.* at 172-173 n.2. The Court held that "[s]uch speculation is insufficient to establish the existence of a present, live controversy." *Id.*

Here, Jarlstrom alleges the short yellow-light intervals expose him to serious risk of physical injury because he, as a pedestrian, or driver or passenger in a vehicle, might enter an intersection with a green light and collide with a vehicle entering the intersection with a yellow light but insufficient time to travel through the intersection. This scenario assumes that the driver entering the intersection on the yellow light did so without regard to the possibility of cross-traffic in the intersection, in violation of OR. REV. STAT. 811.260(4), which provides:

> A driver facing a steady circular yellow signal light is thereby warned that the related right of way is being terminated and that a red or flashing red light will be shown immediately. A driver facing the light shall stop at a clearly marked stop line, but if none, shall stop before entering the marked crosswalk on the near side of the intersection, or if there is no marked crosswalk, then before entering the intersection. If a driver cannot stop in safety, the driver may drive cautiously through the intersection.

Jarlstrom does not allege that a driver entering an intersection on a green light, just before the light turns yellow, does not have sufficient time to travel through the intersection before the light turns red. Therefore, the driver at issue enters the intersection on a yellow light and must, under Oregon law, drive cautiously through the intersection. A driver complying with the law would be aware of any traffic entering the intersection in front of him and would, in all likelihood, avoid a collision. Only a driver who is violating the law by entering the intersection on a yellow light,

without caution and without regard to possible cross traffic entering the intersection ahead of him, would be likely to collide with such cross traffic. Additionally, as noted by the City, the driver would also be in violation of OR. REV. STAT. 811.100(1)(c), which provides: "[a] person commits the offense of violating the basic speed rule if the person drives a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to . . . [t]he hazard at intersections." Finally, Jarlstrom's scenario assumes that a driver entering the intersection on a newly-green light would do so in violation of OR. REV. STAT. 811.260(1), which requires a driver facing a green light to "yield the right of way to other vehicles within the intersection at the time the green light is shown." Accordingly, the court would have to assume that a driver is violating the traffic laws to make the serious injury alleged by Jarlstom likely, something it is not allowed to do.

Jarlstrom argues his allegations are more akin to *Natural Resources* than *Lyons*. In *Natural Resources*, the Ninth Circuit held a plaintiff's allegations that the defendant's actions would expose its members' children to a toxic product, which exposure would be nearly impossible to avoid, were sufficient to establish the credible threat of injury required to establish standing. *Natural Res.*, 735 F.3d at 878. The plaintiffs petitioned the court to vacate the defendant's decision to approve and conditionally register two pesticides known to present a risk to young children. *Id.* at 875-76. Because the pesticides were not in use, the plaintiff's members had not suffered any harm prior to the filing of the complaint. *Id.* at 878. However, the court found that the virtually unavoidable exposure to the pesticide, and thus to its admittedly potentially harmful effects, because of its many uses on materials and objects encountered in daily life, satisfied the credible and immediate threat requirement. *Id.*

Jarlstrom argues that because it is virtually impossible for him to avoid the allegedly unsafe

intersections while traveling through the City he lives in, he has adequately alleged the necessary injury-in-fact. The key distinction between *Natural Resources* and Jarlstrom's circumstance is the generally accepted premise that exposure to the pesticide, a toxic product, presented an increased risk of danger to children.[2] Unlike the plaintiff in *Natural Resources*, Jarlstrom has failed to establish that the short yellow-light intervals present any increased risk or danger to himself, or others. Accordingly, Jarlstrom's inability to avoid the short yellow-light interval intersections does not establish a credible threat that he is being exposed to actual or imminent harm.

The absence of any allegation that short yellow-light intervals have resulted in injury ultimately prevents him from satisfying the injury-in-fact requirement. Jarlstrom's failure to allege he suffered an injury as a result of the short yellow-light intervals does not defeat his claim for injunctive relief. *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994)("Although 'past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury,' . . . '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.' "(quoting *O'Shea*, 414 U.S. at 496; *Lyons*, 461 U.S. at 102)). However, Jarlstrom's failure to allege the short yellow-light intervals have caused accidents in the past does undermine his argument that a credible threat of such injury exists. *Stubbs v. Goldschmidt*, No. Civ. 04-6029-AA, 2004 WL 1490323, *7 (D. Or. June 29, 2004)("A plaintiff's inability to point to any history of prosecutions under a challenged statute undercuts their argument that they face a genuine threat of prosecution.").

---

[2]While the amount of exposure expected by the defendant's actions and the risk resulting therefrom were at issue, the parties did not dispute the underlying premise that exposure to the toxic product, a pesticide that required registration with the Environmental Protection Agency, could cause unreasonable adverse effects on human health or the environment. *Natural Res.*, 735 F.3d at 875.

While Jarlstrom represents in his declaration that he believes the discovery process will reveal a history of more accidents at short yellow-light interval intersections than would have occurred if the intervals were appropriately timed, he has failed to present evidence of any accidents occurring at the short yellow-light interval intersections. The absence of allegations or evidence of such accidents necessitates a finding that the threat perceived by Jarlstrom is not actual or imminent.

Finally, Jarlstrom is not alleging the likelihood of an injury unique to him, but one that affects any individual who travels through the short yellow-light interval intersections. Jarlstrom alleges the short yellow-light intervals, which violate Oregon law, expose pedestrians, drivers, and vehicle passengers to serious risk of injury. Standing under Article III of the Constitution requires a sufficient showing of injury to the named plaintiff to ensure the requested injunctive relief will vindicate the rights of that plaintiff and not third parties. "[A] federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Lyons*, 461 U.S. at 111; *see also Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 949 (9th Cir. 2011)("Article III, however, requires a sufficient showing of likely injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties."). "We have consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him that it does the public at large – does not state an Article III case or controversy." *Lujan*, 504 U.S. 573-74. Courts are limited to resolving the disputes of individuals – federal, state, and local governments are responsible for vindicating the interests of the public. *Id.* at 576 ("'The province of the court . . . is solely to decide on the rights of individuals.'

Vindicating the public interest . . . is the function of Congress and the Chief Executive."(quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170 (1803))); *see also Lyons*, 461 U.S. at 111-12 (claims by a citizen asserting the unconstitutionality of governmental action are essential to insure effective and fair government on local, state, and national level but federal court is not proper forum to address claims in absence of unique injury to claimant necessary for injunctive relief). Jarlstrom is seeking to remedy an alleged violation of the public interest and has failed to allege an injury unique to him. Accordingly, this court is not the proper forum to address Jarlstrom's concerns about the City's short yellow-light intervals.

Jarlstrom relies on two Supreme Court cases in support of his argument standing may not be denied solely because many people have suffered the same injury: *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669 (1973)("*SCRAP*") and *Federal Election Com'n v. Akins*, 524 U.S. 11 (1998). These cases are distinguishable from Jarlstrom's circumstances based on allegations that plaintiffs had suffered an injury as a result of the defendants' actions.

In *SCRAP*, the plaintiffs alleged that each of its members had suffered economic, recreational, and aesthetic harm as a direct result of defendant's actions. *SCRAP*, 412 U.S. at 678. The Court found these allegations sufficiently established plaintiffs were "adversely affected" or "aggrieved" by the challenged actions to create standing under the Administrative Procedures Act, and the mere fact that many persons shared the same injury should not disqualify any injured individual from seeking review of the agency action. *Id.* at 686. "To deny standing to persons who are in fact injured simply because many others were also injured, would mean that the most injurious and widespread government actions could be questioned by nobody. We cannot accept that conclusion." *Id.* at 688.

Similarly, the plaintiffs in *Akins* alleged the inability to obtain information they considered should be made public under the Federal Election Campaign Act, which the Court recognized as a "concrete and particular" injury. *Akins*, 524 U.S. at 21. The Court distinguished the plaintiffs' case from those where "the harm at issue is not only widely shared, but is also of an abstract and indefinite nature" and noted that while an abstract interest is generally widely shared, "their association is not invariable, and where a harm is concrete, though widely shared, the Court has found 'injury in fact.'" *Id.* at 24.

Here, Jarlstrom has not alleged he has suffered an injury as a result of the short yellow-light intervals. Rather, he alleges the possibility he may be harmed. Jarlstrom's inability to allege he has, in fact, suffered a concrete injury requires a finding that Jarlstrom has alleged abstract and indefinite harm widely shared by others – a generalized grievance insufficient to establish standing.

*B. Causal Connection*

To satisfy the causality requirement for standing, an injury has to be 'fairly traceable' to the challenged action of the defendant. *Lujan*, 504 U.S. at 560. While a plaintiff need not show to a certainty that defendant's actions, and only defendant's actions, are the sources of the threatened harm, the relationship between the two must be more than attenuated. *Native Vill. of Kivalina v. Exxon-Mobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012). "[W]here the causal chain 'involves numerous third parties whose independent decisions collectively have a significant effect on plaintiff's injuries, . . . the causal chain [is] too weak to support standing. . . ." *Id.* (quoting *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)).

Jarlstrom alleges the short yellow-light interval pose a serious risk of harm to himself and others. In light of Jarlstrom's filing his declaration in opposition to the City's motion to dismiss, the

court need not accept this allegation as true and Jarlstrom fails to support the allegation with facts in his declaration. In fact, Jarlstrom states only that he believes the discovery process will reveal evidence the short yellow-light interval intersections are more dangerous than other intersections. Even assuming Jarlstrom has adequately alleged a credible threat of a serious injury, the threat is caused primarily by the unlawful driving practices of those driving through intersections, not the length of the yellow-light interval. The driver's independent decision to violate the law is the true cause of any threat to Jarlstrom, not the City's actions. Accordingly, Jarlstrom has failed to allege the requisite causal connection between the City's actions and an injury-in-fact to Jarlstrom.

*C. Redressability*

"When evaluating redressability, the key question is whether the harmed alleged by the plaintiff is likely to be alleviated by a ruling in its favor." *Maldonado v. Morales*, 556 F.3d 1037, 1043 (9th Cir. 2009). The prospect of obtaining relief from the injury as a result of a favorable ruling cannot be too speculative. *Bras v. California Pub. Utilities Com'n*, 59 F.3d 869, 872 (9th Cir. 1995). In the absence of factual allegations supporting Jarlstrom's claim that the short yellow-light intervals create, or even contribute to, any credible threat to Jarlstrom, the Complaint fails to establish that the remedy sought by Jarlstrom would alleviate the likelihood Jarlstrom would suffer an injury traveling through a short yellow-light interval intersection.

*D. Conclusion*

Jarlstrom has failed to allege he is realistically threatened with a certainly impending injury unique to him, a causal connection between the City's conduct and the threat of such impending injury, or that a ruling in his favor will alleviate the threat of injury. In the absence of allegations or evidence supporting these elements, this court lacks standing to address Jarlstrom's claims. The

City's motion to dismiss the Complaint for lack of standing should be granted. Based on the finding this court lacks jurisdiction over this action, the City's alternative arguments that the court lacks subject matter jurisdiction over Jarlstrom's claims and the Complaint fails to state a claim upon which relief can be granted need not, and will not, be addressed.

II. Motion to Amend

Jarlstrom moves to amend his complaint to address issues raised in defendant's Motion to Dismiss. In the proposed amended complaint ("Amended Complaint"), Jarlstrom alleges he is stating a claim for violation of the Due Process Clause of the Fourteenth Amendment, he believes "the short duration of yellow light intervals is the direct cause of a significant number of accidents at signalized intersections within the City of Beaverton," and the City was made aware of the risks and refused lengthen the duration of the yellow-light intervals. (Pl.'s Mot. for Leave to Amend Compl. Ex. 1.) Jarlstrom also adds factual allegations regarding his engineering background and his regular driving activity within the City. (Pl.'s Mot. for Leave to Amend Compl. Ex. 1.)

The City's primary objection to Jarlstrom's motion to amend the Complaint is futility as the proposed amendments do not remedy the deficiencies in the Complaint. The City also argues that it will be prejudiced if it has to file a second motion to dismiss should leave to amend be granted and that Jarlstrom's refusal to concede the City's motion to dismiss after filing his motion to amend to address acknowledged deficiencies in the Complaint was in bad faith.

Jarlstrom's additional allegations establishing he regularly drives in the City and through the short yellow-light interval intersections, his background as an engineer, and his belief that the short yellow-light intervals cause a significant number of accidents do not alter the court's finding that Jarlstrom lacks standing. The court considered Jarlstrom's additional factual allegations, contained

in his declaration filed in opposition to the City's motion to dismiss the Complaint, in addressing that motion. The allegations do not remedy Jarlstrom's failure to establish beyond a speculative nature that the short-yellow light intervals are the sole cause of accidents at the intersections, that a driver's violation of the Oregon Vehicle Code did not contribute to the accident, or that the remedy sought by Jarlstrom would alleviate the likelihood of an accident. In other words, the new allegations in the Amended Complaint do not alter the analysis or the outcome. Consequently, Jarlstrom's proposed amendments are futile as the allegations of the Amended Complaint do not establish Jarlstrom has standing to pursue this action. Jarlstrom's motion to amend should be denied.

*Conclusion*

The City's motion (#11) should be granted, Jarlstrom's motion (#16) to amend the complaint should be denied, and this case should be dismissed with prejudice

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **September 10, 2014**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 26th day of August, 2014.

JOHN V. ACOSTA
United States Magistrate Judge